ENGLAND, Chief Justice,
dissenting.
I dissent from the majority’s decision to entertain Pressley’s late-filed petition for certiorari, and I deem it essential to explain why.
The contentions in Pressley’s petition are, in essence, that because he expressed a desire for review in this Court, state-provided counsel (either the court-appointed attorney who represented him on his direct appeal or the office of the public defender which agreed to seek certiorari review in this Court) had a duty to file a petition within the thirty-day time limit prescribed by our 1962 Florida Appellate Rule 4.5(c)(6);[1] that the failure to file the petition in a timely fashion resulted in a deprivation of his absolute right to seek such review; that this deprivation constitutes state action denying Pressley the effective assistance of counsel; and that this wrongdoing can only be remedied by our granting him a new trial or considering his late-filed petition for certio-rari review.
A federal district court[2] and the Fifth Circuit Court of Appeals[3] accepted Press-ley’s syllogism and have resolved to release Pressley from custody unless we either allow him to file his late petition or summarily grant him a new trial. In their written opinions, both courts stressed the fact that Pressley had expressed to counsel his desire to seek certiorari review of the state district court’s decision which affirmed his conviction,[4] and that he had been assured that a petition would be filed on his behalf within the thirty-day period. Finding that Pressley’s failure to file the petition on his own was attributable to his reliance on that representation by his state-provided lawyer and to his own ignorance of the requisite *223 filing period,[5] the federal courts surmised that state action had deprived Pressley of the effective assistance of counsel and denied him due process and equal protection of the law.[6] The United States Supreme Court has denied certiorari review of the Fifth Circuit’s decision, putting to rest any possibility of inquiring further into the basis for the determination that Pressley’s rights have been violated.[7]
The fact that we are now powerless to unravel the legal predicate on which Press-ley’s rights hinge does not mean to me that our independent evaluation of those legal principles is now foreclosed. Nor does the fact necessarily compel the remedy which my colleagues have elected. Admittedly, the federal court has posed for conscientious jurists a difficult choice — either we give Pressley a new trial or permission to file a belated petition for certiorari, or the federal court will set him free. Nonetheless, this Court is the state’s highest judicial policymaker, and I believe we are obliged to evaluate the compelled alternatives in this case not only for their effect on Pressley, but as well for their precedential significance. My fundamental disagreement with the majority’s decision is its implicit concession that the resolution of Pressley’s peculiar problem is more important than the jurisprudence which his unique situation has engendered.
The issue of an indigent’s right to certio-rari review here after a Florida district court of appeal has affirmed a conviction on direct, plenary appeal is neither novel nor complex. We have previously addressed that issue, and in doing so we unflinchingly concluded that unrepresented criminal defendants enjoy the same right as every other party desiring certiorari review of a district court decision — that is, quite simply, the right to petition this Court within the period prescribed by our appellate rules.[8] Moreover, I submit that the Fifth Circuit’s decision with regard to Pressley does not put us in the position of having to accord certiorari review or grant a new trial to one who has been duly convicted by a jury of first-degree murder and had his conviction affirmed by the only appellate court in which he has a right of direct review.[9] We can decline both alternatives and allow the federal court to assume the responsibility for the consequence it has threatened — that is, Pressley’s release from custody.
I am troubled by the fact that my colleagues, by acceding to the federal court’s ultimatum and granting the relief requested, have simply fashioned a convenient result to prevent Pressley’s freedom, wholly ignoring in the process the significance of our precedents, the sanctity of our rulemak-ing authority under the constitution, and the practical consequences of abandoning both.[10] My dissatisfaction with the majority’s position is best explained by reference to some well-heeled legal principles.
*224 Under existing Florida law, litigants are only entitled to one appeal as a matter of right.[11] Under existing Florida law, both the state and an indigent defendant have an absolute and equal right to petition this Court for certiorari review if done in compliance with the rules.[12] Under existing Florida law, the thirty-day period of our appellate rules is for either party a “jurisdictional” requisite for certiorari review here.[13] Under existing Florida law, clients are bound by the acts of counsel, even when those acts waive a constitutional right.[14] Under both federal and Florida law, ignorance of the law does not excuse a failure to comply with it.[15]
As legal justification for disregarding these principles, the federal courts have referenced Costello v. State, 246 So.2d 752 (Fla.1971); Baggett v. Wainwright, 229 So.2d 239 (Fla.1969); and Hollingshead v. Wainwright, 194 So.2d 577 (Fla.1967). None of those decisions, I submit, is relevant. Costello merely relies on Baggett. Baggett and Hollingshead were expressly predicated on the United ^States Supreme Court’s decision in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), holding that an indigent defendant is entitled to appointed counsel for the purpose of a direct appeal which is available as a matter of right. Those cases, therefore, stand only for the proposition that the thirty-day filing requirement may be waived where state action has prevented the timely filing of an appeal as of right. Pressley, of course, was accorded both counsel and a timely appeal as of right.[16] Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), stands squarely for the proposition that there is no constitutional right to counsel for purposes of seeking discretionary certiorari review either in a court like ours or in the United States Supreme Court. If the right to counsel is not guaranteed, I fail to comprehend how a procedural omission of counsel has become a constitutional right.
*225 Not only is there an absence of legal support for the majority’s decision, but there appear to be no policy reasons to sustain it. Surely the prevention of Press-ley’s freedom is no justification for a new policy as potentially sweeping as the one now adopted. The majority has not defined the limit of its new “late-petition right,” and I can only hope that their intent is to confine that new right to fact patterns such as that which the Fifth Circuit thought this record supports — that is, where a promise to petition for review within the thirty days allowed by our rule is communicated to an indigent by state-provided counsel. Otherwise, the majority will have created a behemoth which, like the proverbial whale when it met Jonah,[17] will swallow the thirty-day rule.[18]
This is not merely an instance of a hard case making bad law. This hard case has resulted in the Court’s casting aside a substantial body of good law. I had thought this Court would not change existing law to meet the hardships of individual cases.[19] I had thought this Court had the exclusive authority to promulgate rules of practice and procedure for the courts of this state. And I had thought we were bound by the governmental scheme in article V of our constitution, which established the district courts as courts of final appellate jurisdiction. Apparently, all of these notions were inaccurate. Gone too, I fear, is the wisdom of Atlantic Coast Line R. Co. v. Mack, 64 So.2d 304, 307 (Fla.1952), where the Court said:
The reason for the [time limitation] rule is sound and has a definite purpose. Litigation must end sometime. It was never contemplated that the power, right, authority, or jurisdiction to consider a petition for . certiorari, or to issue the writ, could exist for an *226 indefinite period, or in perpetuity, and thereby leave uncertain and undecided vital and important litigation until some of the parties got ready to move. Such a situation would lead to endless delay, uncertainty and confusion.[20]

. This time limitation for discretionary certiora-ri petitions to this Court has been carried forward into our present appellate rules. Fla.R. App.P. 9.120(b).

. Pressley v. Wainwright, No. 75-420-CIV-JE (S.D.Fla.1975).

. Pressley v. Wainwright, 540 F.2d 818 (5th Cir. 1976), cert. denied, 430 U.S. 987, 97 S.Ct. 1688, 52 L.Ed.2d 383 (1977).

. Pressley v. State, 261 So.2d 522 (Fla.3d DCA 1972).

. The Fifth Circuit’s statement that Pressley was “unaware of this filing time,” 540 F.2d at 820, is rather puzzling in view of its later observation that “[t]he record indicates . . that the Public Defender agreed to [undertake his representation] within the thirty-day period in question.” (Emphasis in original.) Id. at 821. Moreover, the record does not support the Fifth Circuit’s statement in this regard, as the only evidence available indicates that Pressley wrote within the thirty-day period. Nothing indicates when the public defender received his request or promised to file for him, and the filing itself, of course, was out of time.

. The Fifth Circuit did not directly rule that Pressley had been denied due process or equal protection, but apparently adopted the federal district court’s conclusion to that effect. 540 F.2d at 821 n.11.

. See Mobil Oil Corp. v. Shevin, 354 So.2d 372, 374 (Fla.1977).

. Crawford v. Wainwright, 222 So.2d 188 (Fla.1969). See also State ex rel. Kovnot v. Ferguson, 313 So.2d 710 (Fla.1975).

. See Lake v. Lake, 103 So.2d 639 (Fla.1958), which explains that in Florida every litigant is entitled to one appeal as a matter of right and that, unless the case is one which falls within our supervisory appellate jurisdiction under article V of the Florida Constitution, the district court is the final tribunal in which review as a matter of right may be obtained.

. The obvious consequence of today’s action is that there is now a right to petition without compliance with the rules. If the timeliness rule is flexible despite precedents declaring it to *224 be “jurisdictional,” no rule that we have adopted can operate other than as a suggestive procedural guideline. Our timeliness rule is already evenhanded. See State v. Harris, 136 So.2d 633 (Fla.1962). It is, of course, self-evident that our appellate rules provide procedural due process and do not in that sense to any degree deny due process of law.

. See, e. g., Lake v. Lake, 103 So.2d 639, 642 (Fla.1958); Siegel v. State, 289 So.2d 764 (Fla. 3d DCA 1974); Frazee v. Frazee, 185 So.2d 484, 485 (Fla. 1st DCA 1966).

. State v. Harris, 136 So.2d 633 (Fla.1962).

. See Florida Admin. Comm’n v. District Court of Appeal, 351 So.2d 712, 715 (Fla.1977); Shevin ex rel. State v. Public Service Comm’n, 333 So.2d 9, 11 (Fla.1976); State ex rel. Kovnot v. Ferguson, 313 So.2d 710, 711 (Fla.1975); Lazenby v. Seaboard Life Ins. Co., 224 So.2d 288 (Fla.1969); Crawford v. Wainwright, 222 So.2d 188 (Fla.1969); Elliott v. Goodwill Industries, 220 So.2d 902 (Fla.1969); Walsh v. Marsh, 220 So.2d 897 (Fla.1969); Dave’s Auto Parts v. Westberry, 220 So.2d 364, 365 (Fla. 1969); Overstreet v. Davis, 219 So.2d 34, 34-35 (Fla.1969); Russom v. State, 109 So.2d 30, 31-32 (Fla. 1959); Central Truck Lines, Inc. v. Boyd, 106 So.2d 547, 549 (Fla.1958); Columbia Cas. Co. v. McFee, 81 So.2d 631, 632 (Fla. 1955); Wieczorek v. Williams, 71 So.2d 262 (Fla.1954); Atlantic Coast Line R. Co. v. Mack, 64 So.2d 304, 307 (Fla.1952); State Dept. of Highway Safety & Motor Vehicles v. Adams, 338 So.2d 542, 543 (Fla. 1st DCA 1976); Flinchbaugh v. Burton, 312 So.2d 827 (Fla. 4th DCA 1975); Hayes v. State, 151 So.2d 671, 672 (Fla.2d DCA 1963); Harris v. Condermann, 113 So.2d 235, 238 (Fla. 3d DCA 1959).

. See, e. g., Wainwright v. Sykes, 433 U.S. 72, 91 n.14, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Estelle v. Williams, 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); Faretta v. California, 422 U.S. 806, 820-21, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Spenkelink v. State, 350 So.2d 85, 87 (Fla.) (England, J., concurring), cert. denied, 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977); State ex rel. Gutierrez v. Baker, 276 So.2d 470, 471-72 (Fla. 1973); State v. Abrams, 350 So.2d 1104, 1105 (Fla. 4th DCA 1977); Brown v. State, 328 So.2d 497, 498 (Fla. 3d DCA 1976); State v. Nelson, 320 So.2d 835, 836 (Fla. 2d DCA 1975); State v. Earnest, 265 So.2d 397, 400-01 (Fla. 1st DCA 1972).

. Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 68, 30 S.Ct. 663, 54 L.Ed. 930 (1910). See generally, 21 Am.Jur.2d Criminal Law § 94 (1965); 9 Fla.Jur. Criminal Law § 402 (1972).

. Pressley v. State, 261 So.2d 522 (Fla. 3d DCA 1972).

. Jonah 1:17.

. If the new right to petition is accorded more broadly on the ground that constitutional rights are triggered merely by a breach of an attorney’s ethical responsibility to inform indigent clients of this Court’s power to review district court decisions by certiorari, and of the time within which such review must be sought, the consequences are truly awesome. For example, if that right exists for indigents, can we say it does not exist for clients who pay their counsel? I think not, under the very due process, equal protection, and access-to-courts rationale on which the federal courts have relied. It would follow that all convicted felons (and perhaps misdemeanants as well) would be eligible for late-filed review if this duty to inform is breached. Then, of course, considerations of fairness (if not our Harris decision, note 12 above) would require that the state be afforded an equivalent right to file late petitions for certiorari. The thirty-day rule, I submit, simply would no longer apply in criminal proceedings brought to this Court from district courts of appeal.
In addition to these legal considerations, a broader rule would have dramatic practical implications. Some of the more obvious are these: (1) We would now apparently have to presume that indigent defendants are ignorant of our rules, since nothing in the record supports the Fifth Circuit’s declaration that Press-ley did not know of our timeliness rule, and on that basis impose a duty on appointed counsel to inform them not only of their procedural rights, but of the time limits within which those rights should be exercised. Non-indigents, of course, should be accorded the same presumption on equal protection grounds. (2) We would have to consider how the state would respond to a motion for belated certiorari review which asserts a failure of counsel to inform, and how we would develop the evidence on which to base our decision to allow or reject a late petition. Among other things, this latter inquiry would require someone to determine factually whether the public defender (or other court-appointed counsel who represented the late-filing applicant) negligently or intentionally failed to file a notice of certiorari within the thirty-day period (assuming a different consequence would flow from that information). Since the policy reasons, if any, for abandoning a timeliness rule in all criminal cases are not apparent, I assume that the majority does not intend the enumerated consequences, and that the action taken today is designed solely to resolve Pressley’s peculiar situation.

.See, e. g., Gentile Bros. Co. v. Florida Indus. Comm’n, 151 Fla. 857, 862, 10 So.2d 568, 571 (1942):
It may be that such an interpretation will work a hardship in this case but individual cases should not be permitted to overthrow a long settled rule that the public has relied on and in a multitude of instances would be adversely affected by it if overthrown. Rules of law must be grounded on reason and justice rather than on what emotional impulse would dictate.

. The Court has placed no limitation on the time within which a petition must be filed after the defendant learns of his right to seek discretionary review here. In this case the public defender in fact acted promptly to file out of time. I will indulge the further assumption that my colleagues consider prompt action to be indispensable to the new late-petition right. If not, some litigants would undoubtedly postpone their requests for certiorari purposefully, hoping to improve their chances of success by watching and waiting either for the publication of another decision which appears to create direct decisional conflict or for our granting of jurisdiction in an arguably similar case.